Affirmed and Memorandum Opinion filed February 19, 2004









Affirmed and Memorandum Opinion filed February 19,
2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00173-CR

____________

 

PAUL EMILE WILSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 209th
District Court

Harris County, Texas

Trial Court Cause No. 903,783

 



 

M E M O R A N D U M   O P I N I O N

The jury found appellant guilty of
aggravated robbery and the trial court assessed punishment at twelve years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  In four points of error, appellant contends
(1) the trial court erred in failing to grant a mistrial after the trial court
admitted evidence of an extraneous offense, (2) the trial court erred in
admitting the testimony of a witness because the State had not provided notice
she would be a witness, and (3, 4) the evidence identifying appellant as one of
the robbers was legally and factually insufficient.  We affirm.

 








FACTUAL AND PROCEDURAL BACKGROUND

On January 31, 2002, the complainant,
Ronnie Moss, received a Veteran=s Administration
check.  His friend, Joe White, drove him
to a local check-cashing establishment. 
Moss cashed the check and was given a clear bag containing $2,000 worth
of ten-dollar bills.  He placed the bag
in his pants and White drove him back to his apartment.

Before returning to his apartment, Moss
stopped on the sidewalk to give his granddaughter $500.  Moss and White then went into the apartment.

Someone knocked at the door, and Moss
opened it.  Two men forced their way into
the apartment, and one held a gun to Moss=s head while the
other took the money.  The two men fled
and Moss called the police.

At trial, Moss identified appellant as the
man who had taken the money.  Moss also
testified that he recognized appellant from the neighborhood. 

ANALYSIS

I.        Evidence
of an Extraneous Offense

In his first point of error, appellant
contends the trial court erred in failing to grant a mistrial because testimony
of an extraneous offense denied him a fair and impartial trial.  Appellant complains of testimony by Moss that
implied appellant was a Acrack head@who sold drugs.[1]  The trial court sustained appellant=s objections to
the testimony and instructed 








the jury to disregard it.[2]  Appellant argues the instruction failed to
cure the error.

We review a trial court=s denial of a
motion for mistrial under an abuse of discretion standard.  Ladd v. State, 3 S.W.3d 547, 567 (Tex.
Crim. App. 1999).  A mistrial is required
only when the improper evidence is Aclearly calculated
to inflame the minds of the jury and is of such a character as to suggest the
impossibility of withdrawing the impression produced on the minds of the jury.@  Hinojosa v. State, 4 S.W.3d 240, 253
(Tex. Crim. App. 1999).  Typically, any
harm caused from an improper question and answer is cured by an instruction to
disregard.  Ovalle v. State, 13
S.W.3d 774, 783 (Tex. Crim. App. 2000). 
The jury is presumed to follow the trial court=s instruction to
disregard improperly admitted evidence. Hinojosa, 4 S.W.3d at 253.








The testimony appellant complains of was
not solicited by the State, but was rather an unresponsive answer to a question
about whether the apartment complex was a common place for people to
congregate.  The court immediately
instructed the jury to disregard the statement. 
In addition to giving the instruction to disregard, the court asked the
jurors whether they could disregard the statement and instructed them that they
were to notify the court if the statement became a factor in
deliberations.  No further mention of the
extraneous offenses was ever made.  Given
these facts, the trial court could have reasonably concluded that the evidence
was not so inflammatory that the jury could not disregard it.  Appellant=s first point of
error is overruled.

II.       Failure
to Provide Notice of a Witness

In his second point of error, appellant
contends the trial court erred in admitting the testimony of a witness because
the State had not provided notice that she would be a witness.  Appellant objected that she was a surprise
witness because her name had not been included on the State=s subpoena list.  The trial court allowed her to testify during
the State=s case-in-chief, but limited her testimony
to rebuttal of testimony elicited by appellant during cross-examination of
previous witnesses.

We review a trial court=s decision to
permit the testimony of a witness whose name is not furnished to the defendant
for an abuse of discretion.  Bridge v.
State, 726 S.W.2d 558, 566 (Tex. Crim. App. 1986).  Among the factors we consider in determining
whether the trial court abused its discretion are (1) whether the State acted
in bad faith in failing to disclose the witness=s name and (2)
whether the defendant could have reasonably anticipated the witness would
testify.  Martinez v. State, 867
S.W.2d 30, 39 (Tex. Crim. App. 1993).  

A defendant has the right to timely notice
of all witnesses the State intends to call at trial.  Young v. State, 547 S.W.2d 23, 27
(Tex. Crim. App. 1977).  However, the
State is not generally required to disclose the identity of rebuttal
witnesses.  See Elkins v. State,
543 S.W.2d 648, 649 (Tex. Crim. App. 1976); Hoagland v. State, 494
S.W.2d 186, 188B89 (Tex. Crim. App. 1973); cf. Young,
547 S.W.2d at 27 (holding that the State was not required to disclose
punishment witness in response to a pre-trial motion because the State did not
know what witnesses it would call at the time of the motion).  ATo require the
State to anticipate any possible defense of an accused and to furnish names of
all possible witnesses and have the court refuse to permit them to testify if
their names were not listed would be to require an impractical and undue
burden.@  Hoagland, 494 S.W.2d at 189. 








Although the witness was called to testify
during the State=s case-in-chief, her testimony was limited
to rebuttal of evidence elicited by appellant during cross-examination.  There is some contrary authority that A[r]ebuttal
testimony can be introduced only after the parties have closed the evidence
offered in chief.@  Greenstein,
Logan & Co. v. Burgess Mktg., Inc., 744 S.W.2d 170, 179 (Tex. App.CWaco 1987, writ
denied) (citing rule 265 of the Texas Rules of Civil Procedure, which is
similar to article 36.01 of the Texas Code of Criminal Procedure).  However, the Texas Court of Criminal Appeals
has held that evidence of extraneous offenses is admissible to rebut defensive
theories raised during cross-examination of the State=s witnesses.   Ransom v. State, 920 S.W.2d 288, 300B01 (Tex. Crim.
App. 1994); see also Webb v. State, 36 S.W.3d 164, 180 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d). 
Because the witness=s testimony was
limited to rebuttal of theories raised by appellant during cross-examination of
the State=s witnesses, we consider her a rebuttal
witness.  Therefore, absent a showing of
bad faith, the trial court would not have abused its discretion in allowing her
to testify.  See Marx v. State,
953 S.W.2d 321, 338 (Tex. App.CAustin 1997), aff=d, 987 S.W.2d 577
(Tex. 1999) (AAbsent a showing of bad faith, a trial
court does not abuse its discretion by allowing the State to call a witness for
the sole purpose of rebutting unforeseen testimony.@).

The record fails to show bad faith on the
part of the prosecutor.  The prosecutor
who tried the case testified that the witness was not listed on the offense
report and that she only learned about the witness the day before the witness
was called to testify.  This evidence
does not show bad faith.  See Doherty
v. State, 892 S.W.2d 13, 18 (Tex. App.CHouston [1st
Dist.] 1994, pet. ref=d) (holding that there was no evidence of
bad faith when A[t]he prosecutor stated that he did not
know of the witness= existence until the night before@ and Ahe did not
determine that her testimony would be needed until the next day when the
defense put on a witness that [the witness] would contradict in rebuttal@).  Appellant=s second point of
error is overruled.

 








III.      Sufficiency
of the Evidence Supporting Identification

In his third and fourth points of error,
appellant contends the evidence identifying him as one of the robbers was
legally and factually insufficient.  The
only evidence identifying appellant as one of the robbers was the testimony of
Moss.  Appellant argues this testimony
was not credible because no fingerprint evidence linked him to the offense,
none of the property taken was found in his possession, and White testified the
robbers wore bandanas over their faces.

In evaluating a legal sufficiency
challenge, we view the evidence in the light most favorable to the
verdict.  Jackson v. Virginia, 443
U.S. 307, 319 (1979); Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim.
App. 2000).  The issue on appeal is not
whether we, as a court, believe the State=s evidence or
believe that appellant=s evidence outweighs the State=s evidence.  Wicker v. State, 667 S.W.2d 137, 143
(Tex. Crim. App. 1984).  The verdict may
not be overturned unless it is irrational or unsupported by proof beyond a reasonable
doubt.  Matson v. State, 819
S.W.2d 839, 846 (Tex. Crim. App. 1991); see also Swearingen v. State,
101 S.W.3d 89, 94 (Tex. Crim. App. 2003).

In reviewing factual sufficiency, we look
at all of the evidence in a neutral light, and will reverse a conviction only
if the evidence supporting guilt is so obviously weak as to render the
conviction clearly wrong and manifestly unjust, or if that evidence, although
adequate when taken alone, is so greatly outweighed by the overwhelming weight
of contrary evidence as to render the conviction clearly wrong and manifestly
unjust.  Vasquez v. State, 67
S.W.3d 229, 236 (Tex. Crim. App. 2002). 
Thus, we must determine Awhether a neutral
review of all of the evidence, both for and against the finding, demonstrates
that the proof of guilt is so obviously weak as to undermine confidence in the
jury=s determination,
or the proof of guilt, although adequate if taken alone, is greatly outweighed
by contrary proof.@  Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see also Swearingen
v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).








The fact finder is the sole judge of the
weight and credibility of witness testimony, and a reviewing court may not
substantially intrude on that role.  Jones
v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).  Contradictions in a witness=s testimony do not
render the evidence insufficient, but affect its weight and credibility.  Losada v. State, 721 S.W.2d 305, 309
(Tex. Crim. App. 1986);  Landers v.
State, 110 S.W.3d 617, 621 (Tex. App.CHouston [14th
Dist.] 2003, no pet.).  Positive in‑court
identification of a defendant by the victim of a robbery is to be given great
weight.  Jones v. State, 687
S.W.2d 430, 432 (Tex. App.CHouston [14th
Dist.] 1985, no pet.); see also Haywood v. State, 507 S.W.2d 756,
758 (Tex. Crim. App. 1974).  The jury may
choose to believe or disbelieve any portion of a witness=s testimony.  Losada v. State, 721 S.W.2d at 309; Landers
v. State, 110 S.W.3d at 621.

The evidence in support of the verdict was
Moss=s testimony that
he was Aa hundred percent@ sure that
appellant was one of the men who robbed him. 
Appellant contends that there was no corroborating evidence, such as
fingerprint evidence or evidence of property recovered from appellant.  However, the positive identification of
appellant as one of the robbers does not need to be supported by corroborating
evidence in order to be sufficient to support the conviction.  See Jones v. State, 500 S.W.2d
661, 666 (Tex. Crim. App. 1973); Moore v. State, 446 S.W.2d 877, 878
(Tex. Crim. App. 1969).  The evidence was
thus legally sufficient to support the verdict. 
Appellant=s third point of error is overruled.








Finally, appellant also contends that, if
the robbers wore bandanas as White testified, Moss=s testimony that
he could see their faces was not credible. 
White also testified, however, that appellant=s bandana kept
falling down, and that the bandana was down when appellant was facing Moss.[3]  Moss=s testimony is not
undermined, because this testimony adequately explains why Moss was able to
identify appellant while White was not. 
Thus, the evidence was factually sufficient to support the verdict.  Appellant=s fourth point of
error is overruled.

The judgment of the trial court is
affirmed.

 

 

/s/      Wanda McKee Fowler

Justice

 

 

Judgment
rendered and Memorandum Opinion filed February 19, 2004.

Panel
consists of Justices Fowler, Edelman, and Seymore.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  The full
testimony was as follows:

Q:         Let me back up.  When you met your granddaughter on the
sidewalk that dayC

A:         Uh-huh.

Q:         Chow far was that from the parking lot or from the
entrance?

A:         Oh, from the
entrance.  From here to you, I=m sorry.  I
misunderstood you.

Q:         That=s okay.  Is that
a common area for people to congregate that you know of?

A:         Yes, ma=am, it is.  That=s where all the crack heads, everybody sold drugs hung
out there, including this gentleman here.  





[2]  The judge=s instruction was as follows:

The last
response, the non-responsive response from Mr. Moss was clearly inflammatory,
irrelevant, had nothing to do at all with this case.  I am telling you right now you are to
disregard the last response from Mr. Moss concerning a crack head and alluding
to the fact that Mr. Wilson is a crack head in any way.  It=s not
relevant.  There is no evidence in any
way.  I am going to tell you:  You are to disregard the last response right
now and throughout this trial.  And going
back to the deliberation room, if anyone brings up that response from him in
your deliberation, you are to contact the Court immediately and the Court is
going to excuse you at that time.  We can=t try these cases with irrelevant evidence such as
this and non-responsive responses from the witnesses such as Mr. Moss just
did.  We want a fair trial for everybody
involved in this case.  We can=t do it if anyone is going to take that into
consideration in your individual verdict. 
Right now can I have your guaranteeCand
there is nothing wrong with saying, no, I probably will consider it.  If you feel that way, let us know right now
because we are going to stop this case right now.  There is no problem.  We will start with a fresh jury and that will
never happen again.  Do I have the
assurance from all of you, at least right now, that you will not in any way
individually take that into consideration, the last response from Mr. Moss in
your own individual deliberation? 
Everybody agrees?  When you get
back there in deliberations, if anyone brings this up in any way, form or
fashion, you ring that bell, let us know, and we will declare a mistrial at
that time.  I count on you to do
this.  This should never have happened at
all.  It will not happen again.





[3]  The relevant
testimony was as follows:

Q:         Now, did he have that
bandana up around his face the whole time?

A:         Like right there.  Well, not whenCwhen
they had their back turned, going in Mr. Ronnie=s
pocket, it was down because they kept pulling it up.  That=s when
Mr. Ronnie seen them, but I didn=t see
nothing but their backs.